Filed 9/21/16  P. v. Baptist CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JHAMAR L. BAPTIST,<br><br>    Defendant and Appellant. | 2d Crim. No. B264681<br>(Super. Ct. No. BA402709)<br>(Los Angeles County) |

A jury convicted Jhamar L. Baptist of attempted murder (Pen. Code, §§ 187, subd. (a), 664),[1] assault with a firearm (§ 245, subd. (a)(2)), possession of a firearm by a felon (§ 29800, subd. (a)(1)), and possession of ammunition (§ 30305, subd. (a)(1)).  The jury found true allegations that he committed the attempted murder willfully, deliberately, and with premeditation (§ 664, subd. (a)), personally discharged a firearm (§§ 12022.5, subd. (a), 12022.53, subds. (b)-(d)), and personally inflicted great bodily injury (§ 12022.7, subd. (a)).  He admitted prior prison term and strike allegations. (§§ 667, subds. (a)-(i), 1170.12, subds. (a)-(d), 667.5, subd. (c).)  The trial court sentenced him to life in prison with a minimum of 14 years for the attempted murder plus 25 years to life for the gun use enhancement and five years for the prior serious felony

---

[1] All further statutory references are to the Penal Code unless otherwise stated.

conviction. The court stayed punishment on the remaining counts and enhancements. (§ 654.) It awarded him 1,139 days of actual custody credit and no conduct credit.

Baptist contends that his trial counsel rendered ineffective assistance in violation of the Sixth Amendment by failing to request a pinpoint instruction on heat of passion. In addition, he contends, and respondent concedes, that he is entitled to conduct credits. Appellant was convicted of violent felonies limiting his credits to 15 percent of the actual time served. (§ 2933.1, subd. (a).) We therefore direct that the abstract of judgment be amended to reflect that appellant be awarded an additional 170 days of custody credits.

FACTS

*Prosecution Evidence*

Armando Zelaya, Andres Ortiz, and Jorge Sanchez drove to Sammy's liquor store one evening to buy beer. Zelaya was unfamiliar with the neighborhood. He had consumed two or three beers but was not "buzzed."

Zelaya and his companions walked into the store. Baptist entered after them. As Zelaya was standing in line to purchase beer, it appeared to him that Baptist "bumped" Ortiz.

Baptist said, "Who the fuck are you?" Ortiz responded, "Who the fuck are you? What the fuck?" Zelaya walked over to them and lifted up his arm. He was "trying to clear some space between [the two of them] and [him]self." Zelaya told Baptist to back up. They exchanged "vulgarities," "cussing each other out." Sanchez tried to pull Zelaya back. Sanchez told Baptist to "just relax." Baptist said, "Fuck you. Don't tell me to relax . . . ." The exchange "got more intense." Zelaya, Ortiz, and Sanchez all exchanged "profanities" with Baptist but not "fighting or threatening words."

Baptist walked out of the store. He said "he would be back" and "made a sign of a gun." Zelaya set down the beer he was holding, and he and his companions also walked out the store. They followed Baptist. Zelaya "was afraid [Baptist] might have something in his car or nearby [with which he] would . . . come back and attack [them]." Zelaya wanted "[t]o make sure [they] didn't get ambushed from behind."

2

Zelaya chased Baptist to the middle of the street. They both stopped, "exchanged words[,] and broke out into a [fist]fight." Zelaya could not recall who threw the first punch. He and his companions were unarmed.

Around 10 "guys" came out of a nearby house and joined the fight against Zelaya. Baptist "took off" and ran into the house. Zelaya "was getting jumped" and fell to the ground. Ortiz "came and hit one of th[e] guys [from the house,] allowing [Zelaya] to get back up."

Baptist ran out of the house back towards the group. He pulled a semi-automatic handgun out of his belt and pointed it at Zelaya from a few feet away.[2] Baptist said, "Fuck all you." As Zelaya turned to run away, Baptist fired at him. Zelaya was hit by three of the bullets. A car pulled up and the driver took him to the hospital. Zelaya was treated for his injuries and released after 10 days. At the time of trial a year and a half later, his left leg was still "very weak and . . . numb."

*Defense Evidence*

Habtom Debru was working at the cash register in Sammy's liquor store. He saw Baptist enter the store and assist a blind man who had ushered Baptist inside. After that, Debru lost sight of Baptist. He did not observe him in a confrontation with anyone.

Kasandra Kinsey went to elementary school with Baptist. She ran into him while buying cigarettes at the liquor store and waited outside since she had not seen him in a while. When he exited the store, he was walking quickly. Three people were "coming behind him . . . real fast." She saw them fighting in the street, "three against one." Baptist "was down on the ground in a matter of minutes." She then saw "numerous . . . people coming out of [nowhere] . . . to help him." She did not see Baptist leave the fight or enter a nearby house. As she "skedaddled down the street," she heard a gunshot but did not see what had happened.

---

[2] Zelaya testified Baptist was about six feet away from him. Sanchez estimated it was "not even a foot or two."

3

DISCUSSION

*Heat of Passion Instruction*

The trial court instructed the jury on self-defense or defense of another (CALCRIM No. 505), accident in the heat of passion (CALCRIM No. 511), and imperfect self-defense (CALCRIM No. 604). Defense counsel did not request an instruction that heat of passion can negate the defendant's ability to deliberate or premeditate, and the trial court did not provide one sua sponte. Baptist contends that his trial counsel's failure to request such an instruction—a modified version of CALJIC No. 8.73[3] or CALCRIM No. 522[4]—violated his Sixth Amendment right to the effective assistance of counsel.

It is well settled that the heat-of-passion instruction embodied in both CALJIC No. 8.73 and CALCRIM No. 522 is a pinpoint instruction that need not be given in the absence of a request. (*People v. Rogers* (2006) 39 Cal.4th 826, 877-878.) Moreover, it cannot be said that defense counsel's failure to request the instruction amounted to constitutionally ineffective assistance of counsel. In order to prevail on such a claim, Baptist would have to establish not only that trial counsel's performance in this regard "fell below an objective standard of reasonableness . . . under prevailing professional norms," but also that he was prejudiced thereby. (*Strickland v. Washington* (1984) 466 U.S. 668, 687-688.) He fails to make either showing.

Defense counsel had a legitimate tactical reason for failing to request an instruction that would focus the jury's attention on Baptist's mental state when he fired

---

[3] "If the evidence establishes that there was provocation which played a part in inducing an unlawful killing of a human being, but the provocation was not sufficient to reduce the homicide to manslaughter, you should consider the provocation for the bearing it may have on whether the defendant killed with or without deliberation and premeditation." (CALJIC No. 8.73.)

[4] "Provocation may reduce a murder from first degree to second degree. The weight and significance of the provocation, if any, are for you to decide. [¶] If you conclude that the defendant committed murder but was provoked, consider the provocation in deciding whether the crime was first or second degree murder. . . ." (CALCRIM No. 522.)

the gun:  his defense was that he was not the shooter.  Defense counsel argued to the jury that "there isn't proof beyond a reasonable doubt" that "Mr. Baptist was the individual who shot Mr. Zelaya . . . .  [¶]  First of all, you can't believe these witnesses.  They're not credible.  And second of all, the physical evidence, the lack of shell casings.  The lack of Mr. Baptist having access to that residence supports a finding that Mr. Baptist was not the individual who shot Mr. Zelaya that night."  An attorney does not provide  ineffective assistance by failing to request a pinpoint instruction that is inconsistent with his theory of the defense.  (*People v. Wader* (1993) 5 Cal.4th 610, 643.)

Moreover, the jury was instructed that "[a] person acts *in the heat of passion* when he . . . is provoked into doing a rash act under the influence of intense emotion that obscures his or her reasoning or judgment.  The provocation must be sufficient to have caused a person of average disposition to act *rashly and without due deliberation*, that is, from passion rather than from judgment."  (CALCRIM No. 511, second italics added.)  A pinpoint instruction explaining that provocation may cause a person to kill without deliberation would have been redundant.  "[C]ounsel need not request unnecessary and duplicative instructions."  (*People v. Lucero* (2000) 23 Cal.4th 692, 729.)

Nor was there any prejudice from the lack of such an instruction.  There was substantial evidence of premeditation:  before the fight became physical, Baptist stated through a combination of words and gestures that he would come back with a gun; after fighting for "a matter of minutes," he left the fight, ran to a nearby house, retrieved the gun, and then returned; before firing the gun he said, "Fuck all you," raised his arm, and pointed the gun at Zelaya.  The defense witnesses did not contradict this version of events.  Although Baptist attempted to cast doubt on the credibility of the prosecution witnesses, the jury necessarily found them credible in determining that he was the shooter.  He cannot show a "reasonable probability that, but for [counsel's failure to request a pinpoint instruction on heat of passion], the result of the proceeding would have been different."  (*Strickland v. Washington*, *supra*, 466 U.S. at p. 694.)

5

*Conduct Credit*

The trial court ruled that it "[would] not give any good-time/work-time credit because of the indeterminate sentence in this matter." Baptist contends and respondent concedes that "[being] sentenced to an indeterminate sentence does not preclude the earning of presentence conduct credit. [Citations.]" (*People v. Duff* (2010) 50 Cal.4th 787, 793.) We therefore modify the judgment to award appellant additional custody credits. (§ 2933.1, subd. (a).)

DISPOSITION

Appellant shall receive an additional 170 days of custody credits. We direct the clerk of the trial court to amend the abstract of judgment accordingly and to transmit a certified copy to the California Department of Corrections and Rehabilitation. The judgment is affirmed as modified.

NOT TO BE PUBLISHED.


PERREN, J.


We concur:


GILBERT, P. J.


YEGAN, J.

6

Michael Garcia, Judge

Craig Richman, Judge

Superior Court County of Los Angeles

_____

Gideon Margolis, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Scott A. Taryle, Supervising Deputy Attorney General, and Rene Judkiewicz, Deputy Attorney General, for Plaintiff and Respondent.